UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL C. GARCIA,

        Plaintiff,

   v.

CITY OF SANTA CLARA; et al.,

        Defendants.

_____/

No. C 10-2424 SI (pr)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART**

### INTRODUCTION

Daniel C. Garcia, an inmate currently at the Salinas Valley State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 concerning his arrest on May 24, 2008. This action is now before the court for consideration of the motion for summary judgment filed by the remaining defendants. Garcia opposes the motion. For the reasons discussed below, summary judgment will be granted in part and denied in part. The action will be referred to the court's *pro se* prisoner mediation program.

### BACKGROUND

A.   <u>Procedural History</u>

Garcia alleged in his unverified second amended complaint that, on May 24, 2008, he was arrested by officers of the Santa Clara Police Department while he was at the Marriott Hotel hosting a party. He alleged that the police came to his hotel room door in the early morning hours and told him to leave the hotel. He refused to leave and was arrested. He alleged that he had been subjected to an unlawful arrest, excessive force, and several state law torts.

**United States District Court**
For the Northern District of California

The second amended complaint alleged fifteen "causes of action."  As a result of several rulings, the Marriott Hotel defendants, the *Monell* claims against the police chief and the City of Santa Clara, and several of the causes of action have been dismissed.  *See* Docket # 33 (granting summary judgment in defendants' favor on *Monell* claims); Docket # 34 at 3 (dismissing § 1983 portions of second, third, fourth, fourteenth and fifteenth causes of action, but leaving state law claims in those causes of action intact); *id.* (dismissing fifth, sixth, tenth and sixteenth causes of action); Docket # 57 (granting Marriott defendants' motion to dismiss all claims against them).  As a result of plaintiff's request, the fourth and seventh causes of action are now dismissed.  *See* Docket # 112-1 at 4, 5.

The claims that remain for adjudication are the following claims, and only against the individual law enforcement defendants:

| Cause of Action: | Claim: |
|---|---|
| First | First Amendment claim for violation of rights of association and privacy |
| Second | violation of Article 1, Section 1 of the California Constitution |
| Third | violation of Article 1, Section 7 of California Constitution |
| Ninth | Fourteenth Amendment due process and equal protection claims |
| Eleventh | battery claim |
| Twelfth | assault claim |
| Thirteenth | § 1983 and state law claims for false arrest and false imprisonment |
| Fourteenth | intentional infliction of emotional distress claim |
| Fifteenth | negligent infliction of emotional distress claim. |

This action was stayed for two years while Garcia was in Riverside County Jail being prosecuted for murder.  *See* Docket # 60.  He eventually was convicted of "criminal conspiracy and murder for financial gain" and was sentenced to life in prison without the possibility of parole.  Docket # 63 at 1.  He then moved to lift the stay and go forward with his claims in this action.  The stay was lifted on May 12, 2014.  Docket # 75.  After the parties did discovery, the remaining defendants filed a motion for summary judgment.  After obtaining extensions of the

United States District Court
For the Northern District of California

deadline, Garcia filed a brief in opposition to the motion for summary judgment, but did not include any evidence with his legal brief. *See* Docket # 112. Almost a month later, Garcia filed his declaration in opposition to the motion for summary judgment.[1] *See* Docket # 114 at 4-17.

B.    Undisputed Facts

The following facts are undisputed unless otherwise noted:

On May 23, 2008, Daniel Garcia was a registered guest at the Marriott Hotel in Santa Clara, California. In addition to a regular hotel room, he rented the presidential suite (a/k/a room 1444) at the hotel to "host a social gathering with other registered guests." Docket # 114 at 6. Room 1444 had no beds in it. *Id.*

In the early hours of May 24, 2008, security officers at the Marriott Hotel tried to put an end to the gathering in room 1444. Hotel security officer James Fridman declared: "I observed loud music and a party taking place in room 1444, and I asked the room occupants to stop their party. After they did not comply with our requests, I told them they were evicted. They refused to exit the hotel. [¶] Thereafter, I called the Santa Clara Police Department to help us evict the hotel guests." Docket # 96 (Fridman Decl.) at 1-2; *accord* Docket # 91 (Edano Decl.) at 1.

It appears that security officers had spoken to other occupants in room 1444 and that Garcia was not present at the time. Garcia states that, when the hotel security officers spoke to other occupants of room 1444, he was in his other hotel room, and he "returned to the suite, unaware of hotel security's request to vacate the room per their interaction" with another occupant of room 1444. Docket # 80 at 2; *see* Docket # 27 at 13.

Santa Clara police officers Bell, Lange and Carleton arrived at the hotel at about 1:40 a.m., and were escorted to room 1444 by hotel security officers. Docket # 94 at 1. Officer

---

[1]The tardy submission of the declaration had the look of gamesmanship. The declaration was (a) filed a month after the deadline without any explanation for the delay, (b) filed after defendants' reply was filed, and (c) attached to an unrelated filing that (like the declaration) was dated weeks before it was filed. This is not the first action of plaintiff that looks like gamesmanship. Earlier, he tried to schedule depositions in Tehachapi the day before and day after Thanksgiving. *See* Docket # 108 at 2. Plaintiff is cautioned that sanctions can be imposed for papers "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1)

United States District Court
For the Northern District of California

"Lange told the men who answered the door that hotel security had complained of a loud party and was evicting the occupants.  Lange talked to them for about a minute before Daniel Garcia stepped into the doorway and asked why [the police] were there. [¶]  Lange explained to Garcia that there were complaints of a loud party and the hotel was evicting him."  Docket # 97 (Carleton Decl.) at 1-2.   Garcia argued with Lange for 1-2 minutes, refused to leave the hotel and demanded a refund.  Docket # 97 at 2;  *see also* Docket # 98 (Bell Decl.) at 1-2 ("Garcia refused to leave and argued for a refund.  Lange warned Garcia at least three times that he would be arrested and Garcia replied that he wasn't going to leave the room").

Garcia declares that there was not a loud party in room 1444; his guests were not unruly; he had no agreement with the hotel regarding a "no-party policy"; the hotel manager had consented to him hosting a social gathering with other guests in room 1444; Garcia received no complaints from other hotel guests; and he had not been personally told by hotel security or hotel staff to leave the hotel.  Docket # 114 at 6, 8.  Garcia states that the officers did not attempt to verify whether any such no-party policy existed and did not look into his claims that he had the consent of the manager to host a social gathering before arresting him.  Docket # 114 at 6-7. (Garcia appears to take the position here (and when confronted by the police) that, having paid for his room, the hotel had no recourse other than filing a civil action against him for anything he did at the hotel.  *See* Docket # 112-1 at 6.)

As mentioned earlier, Garcia argued with Lange at the doorway and refused to leave the hotel.  The parties disagree as to whether Garcia attempted to withdraw from the doorway back into the hotel room.  Garcia states that he did not attempt to return to the room, and was merely trying to explain his position to the officers when officer Lang grabbed him and pulled him from the doorway into the hallway, "without any notice, or any provocative moves" by Garcia. Docket # 114 at 6-7.    Defendants dispute this, and present evidence that Garcia moved backwards, like he was going to retreat into the room.  *See* Docket # 94 at 2; Docket # 97 at 2. Officer Lange states that he asked Garcia to step into the hallway, put his hand on Garcia's left arm and "gently pulled him into and across the hallway, but [Lange] didn't have to pull very hard because [Garcia] was off balance."  Docket # 94 at 2.

4

United States District Court
For the Northern District of California

Once Garcia was pulled (gently or harshly) into the hallway, a "physical altercation ensued."  Docket # 7.  Garcia physically resisted Lange's efforts to put Garcia's chest against the wall and hands behind his back to be handcuffed.  Docket # 94 at 2.  Officer Lange pushed his foot against the back of Garcia's knee, and Lange and Bell "lowered" Garcia to the carpeted floor, where Garcia continued to resist by swinging his fists, flailing his legs and kicking at officer Bell.  "Lange kneeled on him and tried to control his right side," and Bell tried to control Garcia's left hand, but Garcia "kept pulling his hand away so [Bell] couldn't get a good grip.  Garcia brought his knees to his chest and kicked at [Bell's] shoulder and face with the heel of his left foot.  He was wearing only socks."  Docket # 98 at 2.  Bell pushed Garcia's leg down and punched Garcia in the face "to distract him enough to handcuff him."  *Id.*  The blow stunned Garcia, and officers Lange and Bell rolled him over and handcuffed him behind his back.  *Id.*  The officers brought the now-handcuffed Garcia back to a standing position, where Garcia started struggling again and tried to hit Lange in the head with his elbow when Lange leaned over to pat down one side of Garcia's body.  Docket # 94 at 2.  Lange then used a leg sweep to "lower" Garcia back onto the carpeted floor; Garcia landed on his leg and buttocks, and Lange maintained pressure on Garcia's left wrist once on the floor.  Docket # 94 at 2.  Officer Lange called sergeant Hosman and requested a wrap restraint so they could transport Garcia and keep him from fighting against them.  *Id.*  Sergeant Hosman arrived in about 4-5 minutes.  Docket # 98 at 2.  The officer put Garcia in the wrap and carried him out of the hotel to a patrol vehicle.  *Id.* at 2-3.  The wrap has a torso piece and a leg piece; the wrap appears to bind the subject's legs together, and keeps him in a seated position with his legs straight.  *See* Docket # 59-2 at 2 (hotel security camera's picture reportedly showing police carrying Garcia in the wrap device); Docket # 98 at 2.

Garcia does not dispute the defendants' description of the struggle in the hallway.  He does not affirmatively state what exactly he and the officers did, except to note that he was trying to "alleviate the pain" caused by the officers' acts, and that officer Bell punched him in the face with sufficient force to cause a black eye.  Docket # 114 at 7, 9.  Here's is Garcia's evidence on the incident:

A physical altercation ensued as the Defendants attempted to take me to the ground. They used a series of control holds which caused pain to my arms and wrists and I felt my personal safety was in jeopardy. I did not try to injury (sic) or attack any of the officers, but only tried to alleviate the pain being caused by their actions. I was not told that I was under arrest. I repeatedly asked "why are you doing this to me?" I heard one of the officers yell at me to stop resisting and he called me an "arrogant faggot." [¶] After the officers took me to the floor, I felt Officer Bell strike my face with his fist which stunned me. I then recall being placed into handcuffs and a restraint and carried out of the hotel.

Docket # 114 at 7.

The parties agree that Garcia was placed in the back of a patrol car at the hotel while in the wrap device. Once he was in the parked police car, Garcia reached into his back pocket, obtained his two cell phones, and called 9-1-1. The dispatch operator contacted the police officers on the scene to tell them that Garcia was calling 9-1-1. The parties agree that officer Lange then opened the car door and took the cell phones away from Garcia. They disagree, however, as to the circumstances under which officer Lange retrieved the cell phones. Garcia declares: Lange "opened the door and proceeded to pull my hair and strike me until I gave him the phone." Docket # 114 at 8. By contrast, officer Lange states that he opened the car door, saw that Garcia had partially freed himself from the wrap device, and attempted to get the cell phones so that Garcia "would stop calling 911, but [Garcia] resisted and tried to bite [Lange's] arm." Docket # 94 at 3. Lange declares that he grabbed Garcia's hair and "pulled it back just far enough" so Garcia couldn't bite Lange, pushed Garcia's head with the palm of his hand and grabbed both cell phones from Garcia. *Id.*

The parties agree that Garcia was taken to the police station, and eventually taken to the medical interview desk at the station. A nurse gave Garcia a form and a pen to get some information about his medical history. The parties agree that Garcia ended up on the floor, but disagree as to the circumstances – such as whether he took a fighting stance – that led to him being on the floor.

Plaintiff's Version: Garcia was attempting to read the medical forms before signing them. Docket # 114 at 8. Officer Lange became irritated and told him to just sign the forms. *Id.* Garcia told officer Lange he would not sign the form until he read it. *Id.* at 8-9. Officer Lange then "grabbed [Garcia] from behind and knocked [him] to the ground." *Id.* at 9.

1   Garcia states that he was "in a casual stance," had not assumed a "fighter's stance," had not

2   made "any provocative movements," and had not reached for a pen before officer Lange grabbed

3   him. *Id.*

4              <u>Defendant's Version</u>:  Defendant Lange declares that Garcia was confrontational

5   with the nurse and refused to sign the form.   Garcia then "balled up his fists and clutched the

6   pen.  He held his fists between his waist and mid-chest and held the pen downward so it could

7   be used as a stabbing instrument." Docket # 94.  A correctional sergeant restrained Garcia "with

8   a bear hug-like control hold. [Lange] assisted the sergeant with bringing Garcia to the floor.

9   [Lange] had Garcia in a figure four leg lock to control his legs.  Garcia yelled and swung his

10   elbows." Docket # 94 at 4.  Lange denies that either he or the sergeant kicked or struck Garcia.

11   Other officers put Garcia in leg irons, waist chains and handcuffs, and handcuffed him to a chair.

12   *Id.*

13        Garcia states in his opposition brief that, once placed in the county jail inmate population,

14   he was sexually assaulted by other inmates.  Docket # 114 at 9.  He did not, however, allege any

15   claim against any defendant in this action regarding his treatment in the jail.  Nor did he present

16   any evidence that defendants played any part in the decisions regarding his housing in the jail.

17

18                       **VENUE AND JURISDICTION**

19        Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because

20   the events or omissions giving rise to Garcia's complaint occurred in Santa Clara County, located

21   in the Northern District.  *See* 28 U.S.C. §§ 84, 1391(b).  This Court has federal question

22   jurisdiction over this action under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.

23

24             **LEGAL STANDARD FOR SUMMARY JUDGMENT**

25        Summary judgment is proper where the pleadings, discovery, and affidavits show that

26   there is "no genuine dispute as to any material fact and [that] the moving party is entitled to

27   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment

28   "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).  Here, Garcia's pleadings were not signed "under penalty of perjury" and therefore are not considered as evidence for purposes of deciding the motion.

The court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id.* at 631.

United States District Court
For the Northern District of California

**DISCUSSION**

A.   <u>The Arrest</u>

    1.   <u>False Arrest Claim</u>

      The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it).  An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010); *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004); *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002).  For probable cause to exist, it is not necessary that the crime actually have occurred. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).  Under California law, "an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" *Id.* (internal citations omitted; brackets in original).

      Garcia was arrested for trespass under California Penal Code § 602(o).  In 2008, that statute provided, in relevant part:

> [E]very person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor:
>
>      \*   \*   \*
>
>     (o) Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession.

Cal. Penal Code § 602(o) (2008).

      On the evidence in the record, no reasonable jury could find in Garcia's favor on his claim that he was subjected to a false arrest.  The evidence is undisputed that (a) hotel security officers told the occupants of room 1444 that they were evicted, but the occupants refused to exit

United States District Court
For the Northern District of California

the hotel; (b) Santa Clara police then were summoned by hotel security officers to assist in evicting the occupants of room 1444; (c) officers Lange, Bell and Carleton were escorted by security officers to room 1444 to evict the occupants; (d) officer Lange told the men who answered the door to room 1444 that the hotel evicted the occupants; (e) when Garcia stepped into the doorway, officer Lange told Garcia that the hotel evicted him and the police were there to get him to leave the premises; and (f) Garcia refused to leave the hotel.  At that point, the officers had probable cause to arrest Garcia for trespass.  Even viewing the evidence in the light most favorable to Garcia, a prudent person would have concluded that there was a fair probability that Garcia had committed the crime of trespass because Garcia had refused to comply with officer Lange's instruction to leave the hotel upon being requested to leave by the officer at the request of the hotel's security guard.  *See* Cal. Penal Code § 602(o).

Garcia makes several arguments trying to show that the arrest was unlawful, but his arguments fail to defeat defendants' motion.  Garcia argues that he did not trespass and was never convicted of trespass.  However, it is not essential that the crime actually have been committed or that a conviction eventually occur for there to be probable cause to arrest one for a crime.  *See Blankenhorn*, 485 F.3d at 471.

Garcia next argues that his party was not loud, that his contract with the hotel did not include a no-party policy, and apparently that he could not be made to leave until refunded the monies he had paid for the room.  But these were disputes with the hotel, and the disputes with the hotel about the propriety of the hotel's policies and the hotel's decision to evict him did not show an absence of probable cause to arrest him for trespass.  "Once probable cause to arrest someone is established, however, a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.'"  *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (*quoting Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)); *see also Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (an officer may not ignore exculpatory evidence that would "negate a finding of probable cause," but the mere existence of some evidence that could suggest a defense to the charge does not negate probable cause).

1    Garcia further argues that he was not in the room earlier when the other occupants were

2    evicted by the hotel security officers. Even if true, the trespass statute does not require that there

3    be two separate efforts to evict the guest. Assuming that Garcia was not present when the hotel

4    security officers visited room 1444 before the police arrived, this fact does not help Garcia

5    because there indisputably was probable cause to arrest him for trespass based only upon his

6    own actions in the presence of the police: Garcia refused to leave the hotel upon being requested

7    to leave by officer Lange at the request of the owner's agent (i.e., the hotel security officer) and

8    upon being informed by the officer that the officer was acting at the request of the hotel security

9    officer. *See* Cal. Penal Code § 602(o). Defendants are entitled to judgment as a matter of law

10   on Garcia's § 1983 false arrest claims.

11

12        2.        Other Arrest-Related Claims

13             a.        First Amendment

14   Garcia alleged in his second amended complaint that his arrest violated his First

15   Amendment rights of association and privacy. Garcia fails to present any evidence to support

16   any claim that his stay at the hotel and his party in the hotel room implicated any First

17   Amendment rights. The fact that Garcia was at the hotel with other gay men who were there

18   after attending a local amusement park's "Gay Day" did not cloak his hotel room gathering with

19   First Amendment protections. *See generally City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989)

20   (opportunities to dance with people in a different age group "might be described as

21   'associational' in common parlance, but they simply do not involve the sort of expressive

22   association that the First Amendment has been held to protect"); *Villegas v City of Gilroy*, 484

23   F.3d 1136, 1142 (9th Cir 2007) (members of motorcycle club challenging their expulsion from

24   the Gilroy Garlic Festival did not show any interference with their First Amendment freedom

25   of association where they presented no evidence they advocated any political, religious or other

26   viewpoint; "[t]here is no evidence that the plaintiff's club engaged in the type of expression that

27   the First Amendment was designed to protect"). In addition to not showing any protected

28   conduct in the social gathering, Garcia ignores the fact that the party occurred on private

11

property.  "[T]he general public does not generally have a First Amendment right to access private property for expression." *Wright v. Incline Village General Improvement Dist.*, 665 F.3d 1128, 1138 (9th Cir. 2011).  Garcia does not show that the hotel's 14th floor guest room area was anything other than private property.  Even if the hotel hallway was considered some sort of public space, it would have been at the very most, a nonpublic forum.  "[A] nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas. The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose."  *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 811 (1985);  *See Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of Cal.*, 475 U.S. 1, 28 (1986) ("First Amendment does not itself grant a right of access to private forums").

Garcia also fails to show a triable issue in support of his claim that he was arrested as retaliation for criticizing and challenging the police officers' authority in the hotel.  Garcia contends that the officers were motivated by the fact that he "argu[ed] with them regarding their request that he vacate the hotel suite."  Docket # 112 at 16.  "To establish a First Amendment retaliation claim . . . a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). The burden then shifts to the government to show that it would have taken the same action even in the absence of the protected conduct. *Id.*  The undisputed evidence shows that the police officers had been summoned to evict occupants of room 1444 because they refused to leave when the hotel security officers tried to evict them.  Garcia was arrested because he refused to leave the hotel after being told he had been evicted from the hotel.  He fails to demonstrate, or show a triable issue in support of his claim, that his criticism of the police officers was a substantial or motivating factor in the officers' decision to arrest him.  Although Garcia argued with the police who were trying to get him to leave and then trying to arrest him, and (according to Garcia) one of the officers called him an "arrogant faggot," that is not enough

to raise a triable issue of fact that he was arrested due to his First Amendment activity given the undisputed evidence that Garcia was trespassing by refusing to leave the premises. While such a comment by the officer is not to be condoned, context matters, and the context was that the officers and Garcia were throwing verbal brickbats at each other as they physically struggled. *See, e.g.,* Docket # 98 at 2 ("Garcia screamed profanity-punctuated legal threats at us"). There indisputably was a viewpoint-neutral reason to arrest Garcia: he was a trespasser and was unwilling to leave voluntarily. Garcia's own evidence that he was the only one in his group arrested supports the view that he was arrested due to his refusal to leave the premises rather than anything he said: the other occupants of the room chose to leave and were not arrested.

### b.    Equal Protection Claim

Garcia alleged in his second amended complaint that defendants violated his rights to equal protection by arresting him. Government officials' enforcement of criminal laws is subject to constitutional constraints, including the limitations of the Equal Protection Clause. "To prevail on [a] claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose. 'To establish a discriminatory effect . . . , the claimant must show that similarly situated individuals . . . were not prosecuted.' To show discriminatory purpose, a plaintiff must establish that 'the decision-maker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" *Rosenbaum v. City and County of San Francisco*, 484 F. 3d 1142, 1152-53 (9th Cir. 2007) (citations omitted).

Garcia fails to prove, or show a triable issue of fact in support of, his claim that his arrest violated his right to equal protection. Garcia presents evidence that one officer called him an "arrogant faggot" while Garcia struggled with the officers in the hallway. This is insufficient to raise a triable issue that defendants acted with discriminatory purpose in arresting Garcia, in light of the undisputed evidence that the police were summoned to evict room occupants who refused to leave the hotel, police notified Garcia he was being evicted, and Garcia stuck to his

United States District Court
For the Northern District of California

position that he would not leave voluntarily.  Garcia's own evidence undermines his argument

that his arrest was due to his sexual orientation: his "gay guests,"  Docket # 27 at 21, were not

arrested because, unlike Garcia, they voluntarily left the hotel.  Garcia fails to present any

evidence of discriminatory effect.  He argues that "no heterosexual guests were evicted from the

hotel or arrested by law enforcement," Docket # 112-1 at 25, but fails to provide any evidence

that there was any heterosexual guest who had been evicted and thereafter refused to leave, but

who was not arrested by the police.  The absence of similarly situated people being treated

differently undermines Garcia's equal protection claim.

Garcia also argues that he is proceeding on a "class of one" equal protection claim.  The

"class of one" theory of an equal protection violation does not require a suspect classification

like race or gender or a fundamental right, but does require a plaintiff to demonstrate that the

state actor (1) intentionally (2) treated him differently than other similarly situated persons, (3)

without a rational basis.  *Gerhart v. Lake County*, 637 F.3d 1013, 1020 (9th Cir. 2011) (citing

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  A "class of one" equal

protection claim has limited application in challenges to "discretionary decisionmaking" because

it is "incompatible with the discretion inherent in the challenged action."  *Engquist v. Oregon*

*Department of Agriculture*, 553 U.S. 591, 603-04 (2008).[2]  Garcia fails to present any evidence

---

[2]*Engquist* provided this example to illustrate the point:

Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Engquist*, 553 U.S. at 603-04.

United States District Court
For the Northern District of California

of similarly situated people being treated differently from him, and that failure is fatal to his "class of one" theory of an equal protection violation. Garcia does state that his guests were not arrested, but does not present evidence to show that he was similarly situated to them; he was differently situated in that only he refused to leave. Even if his guests were trespassing when they did not depart upon the hotel security officer's request that they leave, *see* Cal. Penal Code § 602(o), Garcia does not present evidence to show that any of those guests refused to leave after the officers arrived and requested them to leave. Further, on the undisputed evidence, the officers had a rational basis to arrest just Garcia: he was the only one who refused to voluntarily depart and end the trespass. Garcia's "class of one" theory fails. In light of the undisputed evidence that Garcia refused to leave the hotel after having been evicted, no reasonable jury could find that his arrest violated his right to equal protection.

c.   Due Process Claim

Garcia also contends that defendants violated his Fourteenth Amendment due process rights by arresting him. Where a particular constitutional amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, and not the more generalized notion of "substantive due process," must be used to analyze such claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998). The constitutional protections of the Fourth Amendment apply to the arrest and use of force in connection with the arrest, and displace the availability of relief under a substantive due process theory. *See Albright*, 510 U.S. at 273 (constitutionality of arrest may only be challenged under Fourth Amendment). Defendants therefore are entitled to judgment as a matter of law on the Fourteenth Amendment due process claim.

The second amended complaint alleged that Garcia was deprived of property, such as the liquor bottles in room 1444. *See* Docket # 27 at 39. Defendants are entitled to summary

judgment because Garcia presented absolutely no evidence in support of his assertion that he had suffered any deprivation of property.

d.    § 1983 False Imprisonment Claim

Garcia asserts a claim under § 1983 for false imprisonment, apparently based on his one- or two-day detention following his arrest. A plaintiff must show that there was no probable for his arrest to prevail on a § 1983 claim for false imprisonment. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). The claim for wrongful detention, i.e., false imprisonment, generally fails when a claim for wrongful arrest fails. *See generally Baker v. McCollan*, 443 U.S. 137, 142-145 (1979) (absent lack of validity of warrant, claim is for violation of state tort law, at best); *id.* at 145 (three-day detention following arrest pursuant to warrant did not violate the Constitution). Here, the existence of probable cause for the arrest is fatal to both Garcia's false arrest and false imprisonment claims. Defendants are entitled to judgment as a matter of law on Garcia's § 1983 claim for false imprisonment.

e.    State Law False Arrest And False Imprisonment Claims

The elements of a state law tort claim for "false arrest or false imprisonment are: (1) the non-consensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (quoting *Easton v. Sutter Coast Hosp.*, 95 Cal. Rptr. 2d 316, 323 (Cal. Ct. App. 2000)). Under California Penal Code section 847(b), "no cause of action shall arise against any peace officer . . . , acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest [when] . . . [t]he arrest was lawful . . . ." *See, e.g., Blankenhorn v. City of Orange*, 485 F.3d 463, 486-87 (9th Cir. 2007) (arresting officers entitled to immunity pursuant to § 847(b) on state law false imprisonment claim where arresting officers had probable cause to arrest plaintiff for trespassing and acted within the scope of their authority under state law, therefore arrest was lawful); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th

1    Cir. 2003) (test under California law for whether an officer has probable cause for a warrantless

2    arrest is "very similar to the Fourth Amendment test applied by [the Ninth Circuit]").

3         Garcia fails to show a triable issue in support of his state law claims that his arrest and

4    detention were unlawful.  As explained earlier in this order, the arrest itself did not run afoul of

5    the Fourth Amendment because there was probable cause for the police officers to arrest Garcia.

6    Even viewing the evidence in the light most favorable to Garcia, the police officers had

7    reasonable cause to believe that Garcia was committing a misdemeanor trespass in their

8    presence; specifically, the officers had announced his eviction at the direction of the hotel

9    security officers, and Garcia refused to leave the premises.  Garcia also argues that the arrest was

10   unlawful because it was in the middle of the night.  The law does not support his argument.

11   California Penal Code section 840 does restrict night-time arrests for misdemeanors, but

12   provides an exception for arrests "made without a warrant pursuant to Section 836 or 837."

13   California Penal Code section 836(a) allows for a warrantless arrest on a misdemeanor

14   committed in the officer's presence. *See Johanson v. Dep't of Motor Vehicles*, 36 Cal. App. 4th

15   1209, 1216 (1995) (citing § 836(a)(1)) (warrantless arrest for a misdemeanor is lawful "only if

16   the officer has reasonable cause to believe the misdemeanor was committed in the officer's

17   presence.")  Defendants are entitled to judgment as a matter of law in their favor on Garcia's

18   state law false arrest and false imprisonment claims.

19

20              f.    State Constitutional Claims

21        Garcia alleges that defendants' acts at the hotel violated his state constitutional right

22   under article I, section 1, of the California Constitution.  "The party claiming a violation of the

23   constitutional right of privacy established in article I, section 1 of the California Constitution

24   must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy

25   under the circumstances, and (3) a serious invasion of the privacy interest." *International Fed'n*

26   *of Prof'l & Technical Eng'rs Local 21 v. Superior Court*, 42 Cal. 4th 319, 338 (Cal. 2007).  A

27   hotel guest who has no "property or possessory interest in the room because [he] was not

28   legitimately on the premises" does not have a reasonable expectation of privacy. *See People v.*

United States District Court
For the Northern District of California

*Satz*, 61 Cal. App. 4th 322, 326 (Cal. Ct. App. 1998).  There is no legitimate expectation of privacy where the guest's "continued presence on the premises was a trespass." *Id.*  Garcia and the other occupants of room 1444 had no reasonable expectation of privacy once the hotel evicted them.  Garcia's claims under article 1, section 1, of the California Constitution fail because Garcia was a trespasser in the hotel at the time of his arrest and therefore had no objectively reasonable expectation of privacy.

The second amended complaint also alleged claims under article 1, section 7, of the California Constitution for violations of his rights to due process and equal protection during the arrest.  These state law rights have "been held to be identical in scope and purpose with the due process clause of the federal Constitution." *Nozzi v. Housing Auth. of City of Los Angeles*, 425 F. App'x 539, 542 (9th Cir. 2011) (quoting *Gray v. Whitmore*, 17 Cal. App. 3d 1, 20 (1971)).  The state law claims for due process and equal protection violations thus fail for the same reasons the § 1983 claims for due process and equal protection violations fail.

### 3.     Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists.  First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201.  If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. *See id.*  If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Although *Saucier* required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As shown in the preceding sections, the evidence in the record does not establish a violation of Garcia's First, Fourth, or Fourteenth Amendment rights with regard to his arrest. Defendants prevail on the first step of the *Saucier* analysis.  Defendants are entitled to judgment as a matter of law on the qualified immunity defense as to the § 1983 claims for violations of Garcia's First, Fourth, and Fourteenth Amendment rights with regard to his arrest.

B.    The Uses of Force

1.    Excessive Force Claims

The constitutional right at issue when it is alleged that a law enforcement officer used excessive force in the course of an arrest or other seizure is the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotation marks omitted).  Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  Courts also consider the "quantum of force used to arrest the plaintiff, the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional state." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (citations omitted).  The reasonableness inquiry in excessive

force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  The court now considers the three uses of force on Garcia.

### a.   Use Of Force In Hotel Hallway

Defendants acknowledge that they did use force on Garcia, but describe it as a measured response to a physically resisting arrestee.  Under the totality of circumstances, and viewing the evidence in the light most favorable to Garcia, a reasonable jury could not conclude that the officers' use of force in arresting him was excessive.

*Severity of the crime*: Garcia's offense was not particularly serious.  He was being arrested because he was trespassing.  *See Blankenhorn*, 485 F.3d at 478 (describing as "minimal" the severity of the crime of misdemeanor trespass).  His continued presence and refusal to leave the hotel made his crime somewhat more serious than a misdemeanor that had already reached its termination.

*Immediacy of threat to safety of officers or others*: Defendants present no evidence that Garcia presented a threat to them when officer Lange pulled Garcia from the doorway into the hallway.

*Active resistance to arrest*: The undisputed evidence shows that Garcia actively resisted efforts to complete the arrest and transport him to the police department.  The only evidence in the record is that Garcia resisted officers' efforts to put his chest against the wall and place handcuffs on him; once put on the floor, Garcia continued to resist by swinging his fists, flailing his legs and kicking officer Bell; once lifted back to a standing position, Garcia tried to elbow officer Lange in the head; and once put on the floor again, notwithstanding being in handcuffs, Garcia continued to struggle so that officers put a wrap restraint on him to carry him to the police vehicle.

*Quantum of force used*:  The force used consisted of pulling Garcia from the doorway into the hallway; pushing Garcia toward the wall to be handcuffed; lowering Garcia to a carpeted

20

floor; kneeling on Garcia to try to secure him to be handcuffed; punching Garcia in the face one time; lowering Garcia to the floor a second time via a leg sweep; putting pressure on Garcia's left wrist while he was on the floor; and putting Garcia in a wrap restraint to carry him out to the police car.  These were not severe uses of force and, other than officer Lange initially pulling him into the hallway, each use of force was responsive to Garcia's struggle to avoid being handcuffed or subdued.

The greatest use of force was officer Bell punching Garcia once in the face, but this was a measured use of force done with the intent to distract him so that he could be handcuffed after he repeatedly resisted efforts to be handcuffed and kicked the officer. *Cf. Blankenhorn*, 485 F.3d at 477 ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force.") The circumstances surrounding that punch were described in the declaration of officer Bell, and not disputed by Garcia. Bell felt some urgency because there were other party participants in the room who could have emerged and become resistant.  Docket # 98 at 2.  Garcia had been taken to the floor after resisting efforts to be handcuffed while standing up, and continued to struggle against the officers while on the floor on his back. Even with two officers trying to secure him, Garcia struggled enough to avoid being handcuffed.  Then Garcia brought his knees to his chest and kicked at Bell's shoulder and face with the heel of his foot. It was then that Bell  "wanted to distract [Garcia] enough to handcuff him so [Bell] pushed [Garcia's] left leg down with [his] left hand and punched him once with a closed fist on his cheek.  The blow stunned him and [Bell] was able to gain control of his left hand." *Id.*  The officers rolled Garcia over and handcuffed him behind the back.  Garcia continued to struggle until the wrap restraint was applied.  Significantly, once he was restrained, the officers' used no further force on Garcia.

*Injuries*:  The injuries were slight.  Garcia received a black eye from being punched by officer Bell.  He provided no evidence of other injuries and no medical records to show any treatment for any injury.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (allegations of injury without medical records or other evidence of injury insufficient to establish excessive force claim under 4th Amendment).

United States District Court
For the Northern District of California

*Efforts to temper use of force*:  The police officers attempted to temper the severity of their response by ordering Garcia to leave the hotel before they took any steps to arrest him. Only when he refused to leave did officer Lange take hold of Garcia's arm and pull him into the hallway.  The struggle in the hallway took 60 to 90 seconds, according to officer Bell.  Docket # 98 at 2.

Defendants argue that Garcia's criminal conviction for resisting arrest[3] stemming from the incident requires that his claim against officer Bell for excessive force be dismissed under the rule from *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Heck* held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed or otherwise set aside or called into question.  *Id.* at 486-87.  This argument fails because the Ninth Circuit has held that *Heck* does not bar an excessive force in circumstances such as were present here.  A "conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'"  *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011).

Garcia argues that any use of force in the hallway was excessive because he had a right to resist the arrest that (in his view) was not lawful.  He argues that he "had a constitutional right to refuse to obey an unlawful order by the Defendants," and could "use reasonable force to protect himself in accordance with the principles of self-defense," Docket # 112-1 at 3 and 9.

---

[3]Garcia disputes that he was convicted of "resisting arrest," and states that he was convicted of "a misdemeanor count of interfering with an executive officer in the performance of his duties as defined by Penal Code § 148(a)(1)."  Docket # 114 at 5, 12.   His quibble with defendants' description of his offense does not create a triable issue.  Courts often refer to the § 148(a)(1) offense as "resisting arrest."  *See, e.g.*, *Hooper v. County of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011) ("Section 148(a)(1) is often referred to as a statute prohibiting 'resisting arrest.'  In fact, however, the statutory prohibition is much broader than merely resisting arrest."); *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) ("Blankenhorn was also arrested for resisting arrest under California Penal Code section 148(a)"); *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) ("A conviction for resisting arrest under § 148(a)(1) may be lawfully obtained only if the officers do not use excessive force *in the course* of making that arrest"); *In re D.B.*, 58 Cal. 4th 941, 945 (Cal. 2014) (listing offenses as including "resisting arrest (Pen. Code § 148, subd. (a)(1).")

The law does not support Garcia's arguments. The absence of probable cause does not grant an individual the right to offer resistance. *See United States v. Span*, 970 F.2d 573, 580 (9th Cir. 1992). An individual's limited right to offer reasonable resistance is only triggered by an officer's bad faith or provocative conduct. *Id.; Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). Even if there had not been probable cause for the arrest, that alone would not have given Garcia a right to forcibly resist arrest. Garcia fails to present any evidence that would allow a reasonable jury to find that the officers acted in bad faith or engaged in provocative conduct that would have conferred on him a limited right to use reasonable resistance. On the evidence in the record, Garcia had no right to offer resistance to the officers' efforts to arrest and handcuff him.

There might be other ways to deal with a misdemeanor arrestee, but that kind of leisurely second-guessing ignores the Supreme Court's directive to analyze the force making "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Doing so, this court concludes that no reasonable jury could find that defendants applied an excessive amount of force during the arrest of Garcia. *See, e.g., Drummond v. City of Anaheim*, 343 F.3d 1052, 1058-60 (9th Cir. 2003) (although some force was justified in restraining mentally ill individual so he could not injure himself or the officers, once he was handcuffed and lying on the ground without offering resistance, two officers who knelt on him pressed their weight against his torso and neck despite his pleas for air used constitutionally excessive force); *Miller v. Clark County*, 340 F.3d 959, 963-68 (9th Cir. 2003) (use of trained police dog to "bite and hold" suspect until officers arrived on the scene less than a minute later does not constitute unreasonable excessive force under 4th Amendment when suspect poses immediate threat to officers' safety, several attempts to arrest suspect with less forceful means are unsuccessful as a result of suspect's defiance, and use of police dog is well-suited to task of safely arresting suspect). Garcia fails to establish a triable issue of fact as to whether he was subjected to excessive force by defendants in the hotel

United States District Court
For the Northern District of California

hallway.  Defendants are entitled to judgment as a matter of law on this Fourth Amendment claim.

Defendants also are entitled to qualified immunity on the claim that they used excessive force in the hallway.  As explained above, the evidence in the record does not establish a violation of Garcia's Fourth Amendment rights with regard to the force used to effectuate the arrest.  Defendants prevail on the first step of the *Saucier* analysis.  Defendants are entitled to judgment as a matter of law on the qualified immunity defense against this claim.

### b. Use of Force In Police Car

Viewing the evidence in the light most favorable to Garcia, the nonmoving party, the evidence shows that officer Lange pulled Garcia's hair and struck him until Garcia gave him the cell phones he had just used to call 9-1-1 to report abuse by the police officers.  Officer Lange offered no explanation for this behavior other than that he was trying to stop Garcia from calling 9-1-1.  While calling 9-1-1 to summon help under the circumstances might be considered juvenile or a waste of 9-1-1 resources, a reasonable jury might conclude that Lange overreacted under the circumstances.  There is no evidence that Lange asked for the phones before trying to pull them away from Garcia forcefully.  There is no evidence that Lange perceived any threat to the safety of officers or others based on Garcia's use of the phones.  Defendants argue that confiscating the cell phones "was obviously necessary because an arrestee cannot be permitted access to communication devices while still on site as this poses an extreme danger for the officers. The arrestee would be easily able to contact his companions, provide information about officers' whereabouts and activities, and thereby place the officers in danger of attack by those companions." Docket # 89 at 28.  This argument fails to persuade.  At the time he used the cell phones, Garcia apparently was in the parking lot of the hotel.  If he had any confederates, they could have just looked at the parking lot to see where the officers were and what they were doing.  A jury might believe the defendants, but a jury also might disbelieve their explanation as to the need to confiscate the cell phones.  Garcia does not dispute that, when officer Lange forcefully attempted to retrieve the cell phones, he tried to bite officer Lange.  Notwithstanding

Garcia's efforts to bite officer Lange in response to officer Lange's forceful efforts to retrieve the cell phones, disputes of fact as to whether there was any actual need for officer Lange to retrieve the cell phones require that summary judgment be denied on the claim that officer Lange used excessive force on Garcia in the police car.  If believed, Garcia's evidence shows gratuitous acts of violence by officer Lange, in violation of the Fourth Amendment.   A trier of fact must hear both versions and decide who to believe.   Garcia establishes a "genuine issue for trial" concerning the force used on him by officer Lange to obtain the cell phones. *Celotex Corp.*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)).   Summary judgment therefore is not appropriate on this excessive force claim against officer Lange.   The same factual disputes that preclude summary judgment on the excessive force claim preclude summary judgment on the qualified immunity defense for defendant Lange.

The other officers are, however, entitled to summary judgment on this claim.  Police officers may be held liable if they have an opportunity to intercede when their fellow officers violate the constitutional rights of a plaintiff but fail to do so.  *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).  The picture Garcia describes is of a quick and spontaneous use of force, i.e., officer Lange came over to the car, reached in, pulled Garcia's hair and struck Garcia as Lange grabbed the phones. Garcia presented no evidence that the other officer-defendants had the "opportunity to intercede" to prevent officer Lange from striking Garcia. Therefore, the law enforcement defendants other than officer Lange are entitled to judgment as a matter of law on the claim that excessive force was used on Garcia in the police car.

c.   Use of Force At Police Station

The parties disagree sharply about the use-of-force incident at the police station.  Garcia presents evidence that he was simply taking his time to read a form when officer Lange became impatient, grabbed Garcia from behind and knocked him to the ground.  By contrast, Lange states that he assisted a correctional sergeant with taking Garcia down to the floor and putting him in a leg lock only after Garcia took a fighting stance and grabbed a pen so that it could be used as a stabbing instrument.  Viewing the evidence in the light most favorable to Garcia, the

nonmoving party, the evidence shows that he was tackled and knocked to the ground while offering no resistance.  If believed, Garcia's evidence shows a gratuitous act of violence by officer Lange, in violation of the Fourth Amendment.  Garcia establishes a genuine issue for trial on his claim that officer Lange used excessive force at the police station.  The same factual disputes that preclude summary judgment on this excessive force claim preclude summary judgment on the qualified immunity defense for defendant Lange.  That is, a reasonable officer would not have thought it lawful to knock to the ground an inmate who was doing nothing other than reading a document.

Garcia presents no evidence that the other defendants were present or had the "opportunity to intercede" to prevent officer Lange from using force on Garcia at the police station. *See Cunningham*, 229 F.3d at 1289-90.   Therefore, the law enforcement officers other than officer Lange are entitled to judgment as a matter of law on the claim that excessive force was used on Garcia at the police station.

2.    State Law Claims

Garcia urges that the officers' uses of force amounted to assault and battery under state law.  An arresting or detaining police officer may "use reasonable force to effect the arrest, to prevent escape or to overcome resistance." Cal. Penal Code § 835(a).  A police officer does not commit battery unless unreasonable force is used. *Saman v. Robbins*, 173 F.3d 1150, 1157, n.6 (9th Cir.1999); *id.* (test under California law to determine if force was unreasonable is same as test applied under federal law); *see also Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (Cal. Ct. App. 1998) (assault and battery claims based on conduct during an arrest require a showing of unreasonable force by the officer).  As discussed above, the officers' uses of force during the arrest was not excessive.  Therefore, defendants are entitled to summary judgment on the assault and battery claims insofar as they pertain to the use of force in the hotel hallway.  As also discussed above, there are triable issues as to the reasonableness of officer Lange's use of force in the police car and at the police station, and these triable issues also preclude summary

judgment for officer Lange as to the assault and battery claims for his uses of force in the police car and at the police station.

Garcia also alleged in his second amended complaint that defendants' actions amounted to negligent infliction of emotional distress and intentional infliction of emotional distress.   In the relevant portion of his brief, Garcia repeats his arguments that defendants unlawfully arrested him and used excessive force on him.   Garcia also argues that there "was negligent supervision and training of the defendant officers and a failure to prevent an assault by other prisoners." Docket # 112-1 at 11.  Garcia further argues that he was maliciously prosecuted.

There is "no independent tort of negligent infliction of emotional distress" on the direct victim of a defendant's acts.  *Gu v. BMW of North America, LLC*, 132 Cal. App. 4th 195, 202 (2005) (quoting *Potter v Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). The tort of *intentional* infliction of emotional distress does exist, and has these elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (Cal. 1991). To be "outrageous," conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Garcia's negligent infliction of emotional distress claim fails as a matter of law.  Insofar as he is attempting to allege a general negligence claim, the claim would have the same fate as his other claims for the reasons discussed in the preceding sections.  The only portion of such a negligence claim that would survive summary judgment would be a claim based on officer Lange's use of force in the police car and at the police station.  Likewise, the only part of the claim for intentional infliction of emotional distress that survives summary judgment is that based on officer Lange's use of force in the police car and at the police station because the lawful arrest and lawful use of force in the hotel hallway did not amount to outrageous conduct.

Garcia tries to introduce a malicious prosecution claim in this portion of his opposition brief.  There was no malicious prosecution claim in the second amended complaint, and he

United States District Court
For the Northern District of California

1 cannot obtain relief on a claim not alleged in the operative pleading.  Such a claim was not

2 included in his second amended complaint and is beyond the scope of this action.  If Garcia

3 wants to pursue a malicious prosecution action, he may file a new action in the appropriate court

4 and against the appropriate defendants.

5        Garcia also argues that Santa Clara police chief Lodge and sergeant Hosman have liability

6 based on their negligent failure to properly supervise and train.  A supervisor may be liable

7 under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or

8 (2) a sufficient causal connection between the supervisor's wrongful conduct and the

9 constitutional violation.  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  A supervisor

10 therefore generally "is only liable for constitutional violations of his subordinates if the

11 supervisor participated in or directed the violations, or knew of the violations and failed to act

12 to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The only evidence in the

13 record regarding sergeant Hosman is that (a) he brought the wrap restraint device that was used

14 to restrain Garcia at the hotel and (b) he was in the area when officer Lange retrieved the cell

15 phones from Garcia in the back of the police car.  The court has determined that (a) the use of

16 force, including the use of the wrap device, did not violate Garcia's rights and (b) the defendants

17 other than officer Lange are entitled to judgment on the claims for excessive force.  Garcia

18 presents no evidence of any training or supervision, or lack thereof, by sergeant Hosman.

19 Sergeant Hosman has no liability as a supervisor on the evidence in the record.   There also is

20 no evidence in the record that Santa Clara police chief Lodge personally participated in or

21 directed the actions of defendants in arresting Garcia.  Accordingly, defendant Lodge is entitled

22 to judgment as a matter of law on all claims.

23

24 C.    Other Arguments

25        Garcia also argues that he was sexually assaulted by other inmates once he was put in the

26 jail.  The second amended complaint did not allege a claim against the defendants for the

27 conditions of confinement Garcia experienced once he was put in the jail.  Not only did Garcia

28 not allege such a claim, he presents no evidence that any of the defendants in this action were

United States District Court
For the Northern District of California

responsible for any jail housing decision.  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  *Id.*  To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" actions which violated his or her rights.  *Id.* at 634.  Any claim for an alleged sexual assault on Garcia while he was in the county jail is not within the scope of this action.  The court does not grant or deny summary judgment on the claim, and instead only determines that it must be pursued in a new action if it can be pursued at all at this late date.

Garcia argues that summary judgment is improper because discovery has not concluded. His argument is unpersuasive.  Under limited circumstances, consideration of a summary judgment motion may be delayed so that a nonmoving party may gather evidence for his opposition.  The court may deny or continue a motion for summary judgment to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  The party requesting the continuance must "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  Garcia does not make the requisite showing to delay or deny the summary judgment motion.  He does not identify a particular document or piece of evidence that is essential to his opposition but instead wants more discovery in general hopes of finding something that might help him ward off summary judgment.  Garcia has had ample time to conduct discovery: Garcia had more than two and a half years to conduct discovery, i.e., from August 30, 2010, when the order of service authorized discovery, until May 19, 2012, when the action was stayed; and from May 12, 2014 when the stay was lifted, until Garcia's opposition

United States District Court
For the Northern District of California

was filed in June 2015.  Garcia contends that he has not received all of his requested discovery material from defendants, but does not identify what particular discovery is outstanding and how that discovery would enable him to avoid summary judgment being granted in defendants' favor. He complains that the court refused to issue two subpoenas, but does not show any error in the court's specific reasons for the refusal to issue the requested subpoenas.  *See* Docket # 69 and # 108 at 1-2.

Garcia does not show that a continuance should be granted.  He does not show that evidence exists that will (not merely might) enable him to present facts essential to justify his opposition to summary judgment.  *See Tatum*, 441 F.3d at 1100; *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  Requiring discovery which has only the possibility of eventually leading to evidence that might enable plaintiff to avoid summary judgment also would undermine the purpose of qualified immunity, which provides "immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Additionally, Garcia has received some discovery and he was not precluded by defendants from independently obtaining discovery.  Garcia simply wants to continue to engage in routine discovery that may or may not lead to helpful evidence.  Garcia fails to persuade the court to deny or delay ruling on defendants' motion for summary judgment.

D.    Referral to Mediation Program

The court has granted summary judgment in favor of the law enforcement defendants on all claims, except that it has denied summary judgment as to some of the claims against officer Lange based on his uses of force on Garcia in the police car and at the police station.  Having granted in part and denied in part defendants' motion for summary judgment, there is a rather narrow dispute left to litigate, i.e., the claims against officer Lange based on the uses of force in the police car and at the police station.  This case appears a good candidate for the court's mediation program.

**United States District Court**
For the Northern District of California

1    Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for

2  mediation proceedings pursuant to the *Pro Se* Prisoner Mediation Program.  The proceedings

3  will take place within **one hundred twenty days** of the date this order is filed.  Magistrate Judge

4  Vadas will coordinate a time and date for a mediation proceeding with all interested parties

5  and/or their representatives and, within **five days** after the conclusion of the mediation

6  proceedings, file with the court a report for the prisoner mediation proceedings.

7

8                                                    **CONCLUSION**

9    The law enforcement defendants' motion for summary judgment is GRANTED in part

10 and DENIED in part.  Docket # 87.  The law enforcement defendants are entitled to judgment

11 in their favor on all claims, except that officer Lange is not entitled to summary judgment on the

12 claims based on his use of force in the police car and at the police station.

13    Plaintiff's motion for a referral to an alternative dispute resolution program is

14 GRANTED.  Docket # 114.  This action is now referred to Magistrate Judge Vadas for

15 mediation proceedings pursuant to the *Pro Se* Prisoner Mediation Program.  The clerk will send

16 a copy of this order to Magistrate Judge Vadas.

17    IT IS SO ORDERED.

18 Dated: September 9, 2015                    _____
                                                                     SUSAN ILLSTON
19                                                                 United States District Judge

20

21

22

23

24

25

26

27

28

31