UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL C. GARCIA,

Plaintiff,

v.

CITY OF SANTA CLARA, et al.,

Defendants.

Case No. 10-cv-02424-SI

**ORDER ON MOTION FOR DISCOVERY SANCTIONS**

Re: Dkt. No. 186

Before the Court is plaintiff Daniel Garcia's motion for discovery sanctions. Dkt. No. 186. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for April 28, 2017. Having reviewed the parties' submissions in detail, for the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion.

**BACKGROUND**

The incidents underlying this civil rights lawsuit occurred in May 2008. The Santa Clara Marriott sought to evict Mr. Garcia for violating its "No Party" policy, and when Garcia refused to leave, hotel staff called the Santa Clara Police Department ("SCPD"). When the police arrived, an altercation ensued. Mr. Garcia was arrested. During and after the arrest, officers used physical force against Mr. Garcia – in the Marriott hallway, in the back seat of a police car, and later, at a Santa Clara County jail.[1]

In 2009, completely unrelated to his May 2008 arrest, plaintiff was arrested and held on,

_____

[1] The Court set forth a detailed factual background in its September 9, 2015 order granting partial summary judgment. *See* Dkt. No. 116 at 1-7.

United States District Court
Northern District of California

among others, charges of conspiracy to commit murder. On June 1, 2010, plaintiff filed this civil rights lawsuit while in custody. Dkt. No. 1. In May 2012, upon motion, the Court stayed this case pending completion of the "significantly more serious" proceedings in Riverside County. Dkt. No. 60. Approximately one year later, Mr. Garcia wrote the Court to provide an update on his criminal proceedings – he had been convicted and sentenced to a term of life without parole. Dkt. No. 63.

On May 12, 2014, upon motion, the Court lifted the stay in this case. Dkt. No. 75. Garcia served his first discovery requests in January 2015; defendants responded in February 2015. Kim Decl. ¶ 3 & Ex. A. On September 9, 2015, the Court granted defendants' motion for summary judgment in part, narrowing the case from at least nine causes of action against multiple defendant police officers to two excessive force claims, and related state tort claims, against a single officer: defendant Alec Lange.[2] Dkt. No. 116.

The Court referred this matter for appointment of *pro bono* counsel on May 17, 2016. Dkt. No. 129. Shortly thereafter, plaintiff's attorneys were appointed to aid with discovery, trial preparation, and trial. Dkt. No. 132. Since being appointed last July, plaintiff's *pro bono* counsel has conducted roughly ten depositions, engaged in document discovery, and closely reviewed the discovery record as it existed when counsel began representing Mr. Garcia. Throughout this process, plaintiff's attorneys have repeatedly encountered specific documents or categories of documents that had not been produced and arguably should have. At plaintiff's request, defendants produced some of these documents; others had been destroyed, lost, or may never have existed.[3] On March 24, 2017, plaintiff filed this motion, requesting sanctions against defendants for spoliation of evidence and other alleged discovery misconduct.

---

[2] In addition, vicarious liability claims remain against SCPD only as related to Mr. Garcia's state tort claims. *See* Opp'n at 8 n.3; Order on MSJ (Dkt. No. 116) at 26-27.

[3] According to plaintiff's motion to continue the trial date in this matter, Dkt. No. 212, defendants have continued producing documents during the briefing period for this sanctions motion.

**LEGAL STANDARD**

Federal trial courts are vested with a wide range of inherent powers that allow them to govern their courtrooms and the litigation processes before them. *Chambers v. NASCO*, 501 U.S. 32, 43 (1991). Inherent powers must be used only "with restraint and discretion." *Id.* at 44. An example of these inherent powers is the discretionary power of a federal trial court to levy appropriate sanctions against a party which prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329-30 (9th Cir. 1993). Appropriate sanctions for spoliation, when found, range from outright dismissal, an adverse inference jury instruction with respect to the spoliated evidence, exclusion of a category of evidence, or monetary sanctions (including attorneys' fees). *See id.*; *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958, 961 (9th Cir. 2006); *see also Goodyear Tire & Rubber Co. v. Haeger*, No. 15-1406, 581 U.S. ___, 2017 WL 1377379, at *5 (Apr. 18, 2017) (quoting *Chambers*, 501 U.S. at 44-45) (Inherent authority "includes 'the ability to fashion appropriate sanctions for conduct which abuses the judicial process.' . . . And one permissible sanction is 'an assessment of attorney's fees.'").

To impose evidentiary sanctions for spoliation, the court need not find that the spoliating party acted in bad faith; willfulness or fault can suffice. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992) (citation omitted); *Glover*, 6 F.3d at 1329. The court need only find that the offending party destroyed evidence with notice that the evidence was potentially relevant to the litigation. *Leon*, 464 F.3d at 959; *Glover*, 6 F.3d at 1329 (internal quotation marks omitted) ("Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation."); *cf. United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of business.").

As for attorneys' fees, a court may award reasonable fees as a sanction for spoliation of evidence against a party "who acts in bad faith, vexatiously, wantonly, or for oppressive purposes." *Leon*, 464 F.3d at 961 (citation omitted). "Before awarding such sanctions, the court

must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith[,]" *i.e.*, "by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (citations and internal quotation marks omitted). "[S]uch a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. . . . [T]he fee may go no further than to redress the wronged party for losses sustained[.]" *Haeger*, 581 U.S. at ___, 2017 WL 1377379, at \*5 (citations and internal quotation marks omitted); *see id.* (requiring a but-for "causal link – between the litigant's misbehavior and legal fees paid by the opposing party."). In addition to a federal court's inherent power to levy sanctions, courts also have authority to sanction a party "who fails to obey an order to provide or permit discovery" under Federal Rule of Civil Procedure 37(b). *Leon*, 464 F.3d at 958 (citation and internal quotation marks omitted). "Willfulness, fault, or bad faith is not required for the imposition of monetary sanctions under Rule 37(b)(2)." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No 09-1967-CW, 2012 WL 5372477, at \*6 (N.D. Cal. Oct. 30, 2012).

## DISCUSSION

This action has been pending for approximately seven years, predicated on events that occurred nine years ago. Mr. Garcia represented himself in this case, from prison, during the first six years of litigation. Essentially two claims remain for trial on May 30, 2017[4]: (i) an excessive force claim against Officer Lange for pulling Mr. Garcia's hair while he was restrained in the back seat of a police car; and (ii) an excessive force claim against Officer Lange for taking Mr. Garcia to the ground and using a "leg lock" at the Santa Clara County Main Jail.

Plaintiff brings this motion seeking two types of sanctions for discovery misconduct. First, plaintiff seeks an adverse inference jury instruction based on defendants' alleged spoliation of certain evidence. Second, plaintiff seeks attorneys' fees for his Court-appointed *pro bono* counsel arising from alleged discovery misconduct. The Court will address each request in turn.

---

[4] Plaintiff filed a separate motion to continue the trial date for at least four weeks. Dkt. No. 212. The Court has not yet ruled on plaintiff's motion for a continuance.

## I.  Sanctions for Spoliation

Plaintiff identifies five categories or items of purportedly spoliated evidence: (i) SCPD emails related to Mr. Garcia, which, if they existed, were destroyed pursuant to SCPD document retention policies; (ii) defendant Lange's personnel records "relating to discipline, civilian complaints, and internal investigations," which, to the extent they existed, were also destroyed; (iii) certain SCPD training documents; (iv) a Professional Standards Unit ("PSU") report from an unrelated arrest in 2009 or 2010; and (v) a supervisor-initialed police report related to Mr. Garcia's arrest.  Plaintiff requests that the jury be instructed to draw an adverse inference related to these categories of evidence – that the jury *must* presume the missing items are adverse to defendants and favorable to plaintiff.  Mot. at 19-20.  The Court will give no such instruction.

The adverse inference instruction is "an extreme sanction and should not be taken lightly." *Moore v. Gilead Scis., Inc.*, No. 07-3850, 2012 WL 669531, at *5 (N.D. Cal. Feb. 29, 2012).  "A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1078 (citation and internal quotation marks omitted).  "[T]he presence of bad faith automatically establishes relevance; however, when the destruction is negligent, relevance must be proven by the party seeking sanctions." *S.E.C. v. Mercury Interactive LLC*, No. 07-2822-WHA (JSC), 2012 WL 3277165, at *10 (N.D. Cal. Aug. 9, 2012) (citation and internal quotation marks omitted).  In addition, "[t]he imposition of a harsh sanction such as . . . an adverse inference instruction requires an analysis of the prejudice suffered by the non-spoliating party." *Moore*, 2012 WL 669531, at *5 (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).  "The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation omitted); *see also Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999) (citation omitted) ("To be actionable, the spoliation of

evidence must damage the right of a party to bring an action.").

The Court will assume that defendants had an obligation to preserve the purportedly spoliated evidence, and thus will focus on what was destroyed, *i.e.*, whether it was "relevant to [Mr. Garcia's] claim[s]," whether defendants destroyed the evidence "with a culpable state of mind," and resulting prejudice to plaintiff. *See id.*

This is not the ordinary case where an essential piece of physical evidence was lost or destroyed, *see, e.g.*, *Silvestri v. GMC*, 271 F.3d 583, 593 (4th Cir. 2001), or where a party deliberately destroyed files or deleted emails to evade discovery, *see, e.g.*, *Leon*, 464 F.3d at 955-56. Aside from the supervisor-initialed use of force report described below, the record is simply not clear as to whether any relevant, useful evidence was spoliated; or, at least not sufficiently clear that the Court can gauge relevance and prejudice in order to fairly levy a sanction as harsh as that being sought by plaintiff. Shortly after Mr. Garcia's arrest, in connection with the PSU investigation, defendants gathered key evidence, which was preserved and produced to plaintiff in this case. Defendants preserved a number of audio interviews: of Mr. Garcia, of the four involved officers, and of five other witnesses. *See* Opp'n at 9; Heaberlin Decl., Ex. A. Defendants preserved phone calls from the night of the arrest, Officer Lange's police report, three supplemental police reports, video files from the Santa Clara County jail, and other evidence. *See id.* While defendants failed to put in place a more robust litigation hold with respect to the involved officers' email inboxes, legacy training materials, and Officer Lange's older personnel documents, the Court is not convinced that anything highly probative was lost or destroyed such that it will damage Mr. Garcia's "right . . . to bring [this] action." *Ingham*, 167 F.3d at 1246. Defendants' conduct was, at worst, negligent.

Only one instance of alleged spoliation identified by plaintiff is troubling. Defendants, purportedly by mistake, purged a supervisor-initialed police report related to Mr. Garcia's arrest. To be sure, defendants retained the original police reports and produced them to plaintiff. However, any time a report involves the use of force, a separate copy is stamped "Use of Force" and stored in the SCPD Chief's Office to be reviewed and initialed "by all supervising officers up the chain-of-command." Opp'n at 16; Winter Decl. ¶ 2. Supervisor approval is to indicate that

the use of force described in the report is consistent with SCPD policy. *Id.* The supervisor-initialed reports are regularly purged pursuant to the SCPD's retention policy, and the copy in Mr. Garcia's case was lost or destroyed. While there are indications that this report might have been approved as a routine matter, the Court cannot be certain. The Court has no doubt that when this report was destroyed (it is not exactly clear when), defendants had notice of Mr. Garcia's claims and should have known this report would be relevant.

The remaining question is the appropriate sanction, if any, for destruction of the supervisor-initialed report. An adverse inference instruction is too harsh given defendants' preservation of other copies of the report, and the availability of witness testimony and other evidence as to the propriety – or impropriety – of Officer Lange's uses of force. However, the jury should be permitted to hear about the missing report and to draw whatever inferences it chooses. Accordingly, plaintiff will be permitted to inquire about the spoliated supervisor-initialed police report at trial on direct- or cross-examination, but the Court will not give an adverse inference instruction.

## II.     Monetary Sanctions

Plaintiff argues that defendants' spoliation, as well as defendants' repeated failure to produce responsive documents, is sanctionable pursuant to both the Court's inherent authority and Federal Rule of Civil Procedure 37(b). Plaintiff seeks nearly $100,000 in attorneys' fees for his Court-appointed *pro bono* counsel in this case based on the alleged discovery misconduct.

Certain sanctions under Rule 37(b)(2) are discretionary. *See* Fed. R. Civ. P. 37(b)(2) (emphasis added) ("[T]he court where the action is pending *may* issue further just orders. They *may* include the following . . . ."); *cf. Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014) (citation and internal quotation marks omitted) ("[W]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1). . . ."). However, where a party "fails to obey an order to provide or permit discovery," "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of

expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C).

The discovery record in this matter is far from perfect. Although plaintiff's counsel expended great effort in obtaining certain discovery – discovery that likely would have been omitted if not for counsel's efforts – defendants eventually produced whatever they could. Now that many of the requested items have been produced, plaintiff will have the benefit of these items (to the extent admissible) at trial. Relying on its "wide discretion in controlling discovery," *Ollier*, 768 F.3d at 862, the Court declines to levy such significant monetary sanctions.

However, defendants' failure to produce Tab VII of the PSU file related to Mr. Garcia, despite representations that the entire file had been produced, is different. Plaintiff's counsel, suspicious that some documents were missing, conducted an in-person review of SCPD records, and only then discovered that defendants had failed to produce an entire section of the PSU file. The Court sees no indication that defendants intentionally concealed this information, especially in light of the limited evidentiary value of new materials contained in Tab VII. But defendants were nonetheless careless in producing an incomplete investigative file. Accordingly, under Rule 37(b), the Court will award counsel its fees for conducting the in-person document review, which would not have been necessary but for defendants' carelessness.

Plaintiff's counsel submitted a number of declarations regarding fees. Plaintiffs state that two associates spent a combined 7.1 hours to conduct the in-person review of SCPD files. Because the Court sees no need for a senior associate to have conducted the bulk of this document review, the Court awards all 7.1 hours at the junior associate's hourly rate of $400. Accordingly, the Court GRANTS plaintiff's request for fees in the amount of $2,840.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

Plaintiff's request for an adverse inference instruction is DENIED. However, plaintiff may inquire as to the spoliated supervisor-initialed police report during trial, and the jury may then draw whatever inferences it chooses.

Plaintiff's request for monetary sanctions is GRANTED in the amount of $2,840. In all

other respects, plaintiff's fees request is DENIED.

This order resolves Dkt. No. 186.

**IT IS SO ORDERED**.

Dated: April 19, 2017

_____
SUSAN ILLSTON
United States District Judge